ARTHUR R. DOUGLAS AND CALLIE O. DOUGLAS, HIS WIFE, *Appellants,* v. CLARA S. OGLE, AS EXECUTRIX OF THE LAST WILL OF I. W. OGLE, *Appellee.*

Opinion Filed June 12, 1920.

1. The distinguishing element of actual fraud is always untruth between the parties to the transaction.

2. Constructive fraud is a term applied to a great variety of transactions which equity regards as wrongful, to which it attributes the same or similar effects as those which follow from actual fraud and for which it gives the same or similar relief as that granted in cases of actual fraud.

3. Mere weakness of mind unaccompanied by any other inequitable incident, if the person has sufficient intelligence to understand the nature of the transaction, and is left to act upon his own free will, is not a sufficient ground to set aside an agreement.

4. Inadequacy of consideration in connection with other inequitable circumstances will justify the cancellation of an instrument.

5. Inadequacy of consideration, coupled with such a degree of mental weakness as would justify the inference that advantage had been taken of that weakness, will furnish sufficient ground for equitable interference.

6. Where a contract is executed on an insufficient consideration by one enfeebled in body and mind, a presumption of fraud arises, but the burden to establish the predicatory conditions to the presumption is on him who would avoid the contract.

7. The findings of a chancellor on the facts will not be disturbed by an appellate court unless such findings are clearly shown to have been erroneous.

8. The obligation of a mortgage executed by a husband and wife on their homestead can not be enlarged by the mere substitution of a new note for a larger sum representing a further loan to the husband to which the wife was not a party.

An Appeal from the Circuit Court for Marion County; W. S. Bullock, Judge.

Decree affirmed.

*Trantham* & *Futch,* for Appellants;

*W. E. Smith,* for Appellee.

REAVES, Circuit Judge.—The appellee, the widow of I. W. Ogle, deceased, and executrix of his will, filed her bill in the Circuit Court of Marion County against A. R. Douglas and wife and from a decree in favor of com-

plainant defendants appealed. We shall refer to the parties herein as complainant and defendants as they stood in the lower court.

The purpose of the bill was to have a satisfaction of mortgage executed by the deceased to defendants declared void and to foreclose the mortgage which purported to have been satisfied, upon the alleged ground that said satisfaction was procured at a time when the deceased was very old and enfeebled in body and mind to such an extent that he was incapable of understanding the nature, effect and extent of the transaction, and without con· sideration in that the debt secured by the mortgage had not been paid, nor was any consideration paid for the satisfaction, and that said satisfaction was induced by false representations.

The answer denies all charges of fraud, says the debt had been paid long before the satisfaction was executed, and avers the mental capacity of the deceased to execute said satisfaction.

We adopt the concise grouping of assignments of errors used in appellants' brief as follows:

A. Alleged errors based on the pleadings.

B. Alleged errors based on the findings of facts.

C. Alleged errors based on rulings as to competency of testimony.

D. Alleged errors based on findings of law.

The only point argued under group "A" is that the bill fails to charge constructive fraud and that the evidence fails to show actual fraud and hence complainant ought not to have prevailed.

"The distinguishing element of actual fraud * * * is always untruth between the two parties to the trans-

action, so that actual fraud may be reduced to misrepresentation and concealment." Not so of constructive fraud. "Constructive fraud is simply a term applied to a great variety of transactions, * * * which equity regards as wrongful, to which it attributes the same or similar effects as those which follow from actual fraud, and for which it gives the same or similar relief as that granted in cases of real fraud," etc. Pomeroy's Eq. Jur. (4th ed.) §992. We have no difficulty in agreeing that the evidence does not show actual fraud, but we think the bill sufficiently charges constructive fraud. Without quoting from the bill, we think the brief summary above given is enough to show equity.

The law is well established that inadequacy of consideration in connection with other inequitable circumstances will justify the cancellation of an instrument. 9 C. J. 1176, Sec. 30. Also that mere weakness of mind unaccompanied by any other inequitable incident, if the person has sufficient intelligence to understand the nature of the transaction, and is left to act upon his own free will is not a sufficient ground to set aside an agreement. 2 Pomeroy's Eq. Jur. (4th ed.) §947.

The bill alleges the total absence of consideration for the satisfaction, and that the deceased, when he executed the paper, was so weakminded as to be "wholly incapable of understanding the nature and extent of the transaction."

It is not necessary that there should have been a fiduciary relation between the parties; nor that it be positively shown that the one was not left to act upon his own free will in order to constitute constructive fraud, but "inadequacy of consideration coupled with such a degree of mental weakness as would justify the inference

that advantage had been taken of that weakness will furnish sufficient ground for equitable interference." 9 C. J. Sec. 40, p. 1177; Allore v. Jewell, 94 U. S. 506, 24 L. Ed. 269; Burke v. Taylor, 94 Ala. 530, 10 South. Rep. 129; Tracey v. Sacket, 1 Ohio St. 54, 59 Am. Dec. 610. And where a contract is executed on an insufficient consideration by one enfeebled in body and mind, a presumption of fraud arises. Holland v. Barnes, 53 Ala. 83, 25 Am. Rep. 595; Boyd v. Boyd, 123 Ark. 134, 184 S. W. Rep. 838; Hattie v. Potter, 54 Wash. 170, 102 Pac. Rep. 1023; Wilkinson v. Sherman, 45 N. J. Eq. 413, 18 Atl. Rep. 228; Pomeroy's Eq. Jur. (4th ed.) §947. But the burden to establish the predicatory conditions to the presumption the law thus raises is on him who would avoid the contract. Sellers v. Knight, 185 Ala. 96, 64 South. Rep 329.

In our discussion of the pleadings we have sufficiently covered the assignments of error based on propositions of law. Group "D." The assignments under group "C" are not argued, so we pass to group "B" or to alleged errors based on findings of fact.

In this connection it should be kept in mind that the findings of a chancellor on the facts will not be disturbed by an appellate court unless such findings are clearly shown to have been erroneous. Simpson v. First Nat. Bank of Pensacola, 74 Fla. 539, 77 South. Rep. 204; Baggott v. Otis, 65 Fla. 447, 62 South. Rep. 362.

Complainant undertook to show the following:

(1) That the debt secured by the mortgage had not been paid, and (2) that the deceased, at the time of executing the satisfaction was mentally incapable of understanding the nature and extent of the transaction. The law required no more than this, and the chancellor found

that both said facts had been proven, and we think he was fully justified in so finding; at least we cannot say he was not justified.

On the point of whether the debt had been paid, several strong and unusual circumstances tend to corroborate complainant's testimony that it had not. Among them are (1) that the mortgage was retained by the deceased and found among his papers with another note (the new note) made by Douglas to him, dated Feb. 5th, 1915, for $500.00; (2) defendant says the old note was paid July 6th, 1913, and it bears a notation on its face to that effect, but it is doubtful if this notation is in I. W. Ogle's handwriting. His banker says it is not, and the chancellor found that it is not; (3) this note as produced by defendant has a paper pasted over the back, thereby completely covering up endorsements on the back. The master, however, by the use of a glass, the application of a pure article of gasoline, and by exposing the paper to the sunlight, found these endorsements to read as follows:

(a) "I consent to an extension to Feb. 5, 15. Note of even date. I. W. Ogle."

(b) "Note and mortgage extended to Aug. 5. I. W. Ogle.".

(c) "On the mortgage and note of even tenor and date of $440 and $60 to be covered by mortgage No. 6415 done by and the Aug. extended to Feb'y 5, 1915." The chancellor also examined this paper and his reading agrees with the master's except as to the last endorsement, and the variance there is not material. Also the original paper is before this court.

We should mention just here that the file number of the mortgage as endorsed thereon is 6415; also that the note is dated Feb. 5th, 1915, and matures Aug. 5th, 1915.

(4) The fact that Ogle had the new note, together with the incongruous explanations thereof by defendant. In his answer he says this note was given to Ogle "as a means of raising money" for defendant "which this defendant supposes he intended to use as collateral for the purpose of raising the money." This answer is sworn to by defendant. But in his testimony he says this note "was just a copy." "I did not leave it for him to fill out, it was just a form to show me how he wanted it made out, without any interest and without any date to be paid. I was to pay him a certain amount every quarter as long as I used the money;" but says he got no money on this note.

(5) The endorsements on the back of the old note in Ogle's handwriting, apparently, from dates given and the subject matter, were made long after the date defendant says the note was paid and turned over to him.

On the other hand some circumstances tend to corroborate defendant's testimony that he paid the note (1) That he had it in his possession is a strong circumstance; and (2) that the satisfaction of mortgage was executed reciting that the debt had been paid.

Mrs. Ogle says the defendant acknowledged and promised to pay the debt after her husband died, and she is corroborated by two other witnesses; but defendant denies having done so. In this state of the evidence it is manifest that it was peculiarly the province of the trial court to determine the facts and his findings conclude us.

Deceased's mental state is described by numerous witnesses. Some of them observed him very little, and their testimony is of little value. But the effect of the evidence

is that Mr. Ogle had serious and .prolonged illness in 1912, and thereafter remained physically and mentally weak until his death in 1917, at the age of seventy-three. It is true that the parties who signed the satisfaction of mortgage as witnesses say that they did not observe any evidence of mental defect at that time, but they were with him very little on that occasion, and the memory of one of them especially as to what did occur is shown to be very hazy.

It is impossible for us to say that the chancellor's findings that the deceased did not understand the nature and extent of his act in signing the satisfaction was not justified.

A cross-assignment of error asserts that the court should have foreclosed the mortgage for the amount of the new note instead of limiting his decree to the old note with interest; but this contention must fail. Mrs. Douglas had executed the mortgage to secure the old note, and her husband and the morgagee could not enlarge the lien on the land to which she had assented in statutory form, by increasing the debt, even though they may have thought and intended that the mortgage could and should stand as security for the new note.

The decree should be affirmed.

PER CURIAM.—The record in this cause having been considered by this court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the court as its opinion, it is considered, ordered and adjudged by the court that the decree herein be, and the same is hereby, affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.